**IN THE UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

JAI HANUMAN HOSPITALITY, LLC, AND
STATE BANK OF TEXAS,

**PLAINTIFFS**

vs.                                                          CIVIL ACTION NO.
                                                             JUDGE_____

CERTAIN UNDERWRITERS AT LLOYDS, LONDON

**DEFENDANT.**

**PLAINTIFF'S ORIGINAL COMPLAINT
JURY TRIAL DEMANDED**

**COME NOW, JAI HANUMAN HOSPITALITY, LLC and STATE BANK OF TEXAS** (hereinafter, referred to as Plaintiffs), and file this, their **Original Complaint**, and for causes of action against CERTAIN UNDERWRITERS AT LLOYDS, LONDON ("CERTAIN UNDERWRITERS") (hereinafter, referred to as "Defendant") would show unto the Court and the jury the following:

**PARTIES AND SERVICE OF PROCESS**

1.   Plaintiff **JAI HANUMAN HOSPITALITY, LLC** owns the property located at 3103 US Highway 59 N, Victoria, Texas 77905 that is the subject of this lawsuit and is situated in Victoria County, Texas.

2.   Plaintiff **STATE BANK OF TEXAS** insured the property located at 3103 US Highway 59 N, Victoria, Texas 77905 that is the subject of this lawsuit and is situated in Victoria County, Texas.

3.   Defendant, CERTAIN UNDERWRITERS is a foreign insurance company registered to engage in the business of insurance in the State of Texas. This Defendant

1

may be served with personal service by a process server, by serving its Attorney for Service, Mendes & Mount, 750 Seventh Avenue, New York, New York 10016.

## STATUTORY AUTHORITY

4. This suit also brought in part, under the Texas Insurance Code, Sections 541.051 *et seq.,* 541.151 *et seq.,* 542.051 *et se.,* and Tex. Civ. & Rem. Code Section 38.01 *et seq.*

## JURISDICTION

5. This Honorable Court maintains subject matter jurisdiction over this matter, pursuant to 28 U.S.C. § 1332, based on complete diversity of citizenship between the parties. The amount in controversy exceeds the minimum jurisdictional limits.

## VENUE

6. This Honorable Court maintains venue under 28 U.S.C. § 1391(b)(2), being the judicial district of the location of the property that is the subject of this action.

## NOTICE AND CONDITIONS PRECEDENT

7. Defendant has been provided written notice of the claims made by Plaintiffs in this complaint, including a statement of Plaintiffs' actual damages and expenses in the manner and form required by Tex. Ins. Code § 542A.003.[1]

8. All conditions precedent necessary to maintain this action and in order to maintain claim under the insurance policy in question have been performed, occurred, or have been waived by Defendant.

## FACTS

---

[1] Tex. Ins. Code 542A.003 requires pre-suit notice not later than the 61st day before an action is filed, unless notice is impracticable because there is insufficient time to give pre-suit notice before the limitations period will expire.  Plaintiff has provided pre-suit notice within the parameters pursuant to 542A.003(d).

2

9. This lawsuit arises out of the following transactions, acts, omissions, and/or events. Hurricane Harvey struck South Texas on April 25, 2017 and caused catastrophic damage for multiple days throughout the region for several days. On or about August 25, 2017, Plaintiffs' property sustained damages as a result of Hurricane Harvey and Tropical Storm force winds over five consecutive days.

10. Plaintiffs submitted a claim to Defendant, CERTAIN UNDERWRITERS, pursuant to the contract of insurance, for damages to the property as a result of Hurricane Harvey and asked Defendant CERTAIN UNDERWRITERS to honor its contractual obligations and cover the cost of repairs to the property.

11. Defendant, CERTAIN UNDERWRITERS, accepted the Plaintiffs' claim and assigned RYZE Claim Solutions to assist in the investigation of the claim, RYZE Claims Solutions assigned a claim number of StateBankofTexas 8-25-17 ("Claim").

12. RYZE Claims Solutions on behalf of Defendant, CERTAIN UNDERWRITERS assigned adjuster Evan Steger to inspect, investigate, evaluate the claim, assess the damages to the property, and communicate with the Plaintiffs as to coverage under the policy.

13. Evan Steger performed an inspection of the subject insured property and provided an estimate of the damages on September 5, 2017. Mr. Steger estimated the covered damages at a replacement cost value of $107,059.78 for the building and $184,449.56 for other structures, and misrepresented the value of Plaintiffs' total loss. Mr. Steger's estimate failed to include all of Plaintiff's covered damages, but did note that the storage building was a *total loss*.

3

14. Plaintiffs then hired Stevephen Lott of Integrity Claims, LLC to inspect the property for damages from Hurricane Harvey, properly investigate and evaluate the claim and communicate with Defendant and its representatives regarding the claim. After inspecting the property, Mr. Lott determined that there was extensive wind damage to the property.

15. Even though the property had sustained extensive damages from the storm, Steger ignored wind created damages to the property. Steger completed a results oriented, unreasonable inspection, failed to document all the covered wind damages to the property. Mr. Steger ignored facts supporting coverage and improperly denied Plaintiffs' damages.

16. Plaintiffs did not agree with Mr. Steger's assessment of the damages to their property and requested a reinspection.

17. The reinspection was completed by adjuster Vearl Wolverton and attended by Mr. Lott. During the reinspection, Mr. Wolverton and Mr. Lott agreed that the storage building was a total loss and due to the extent of the damages the claim would reach policy limits. However, following the 2nd inspection of the property, Mr. Lott received a letter from Erika Salazar advising that the storage building was no longer determined to be a total loss, which was a clear misrepresentation and contradicted the findings of the adjusters sent out to inspect the property.

18. Stevephen Lott determined that Plaintiffs' property damages were grossly undervalued by Mr. Steger, Mr. Wolverton and CERTAIN UNDERWRITERS.

19. Plaintiffs then retained Richard Clarke of Risk Protection Services to inspect the insured's property. Based on this inspection and review of the claim

documents provided he determined that the property sustained damages from wind during the event that exceeded the estimated value provided by Mr. Steger and Mr. Wolverton. Mr. Clarke completed an estimate with damages totaling $829,609.97.

20. Plaintiffs also incurred additoinal expenses of $6,159.43 to repair the Air Conditioner damaged during the storm.

21. Defendant, CERTAIN UNDERWRITERS relied upon Mr. Steger's and Mr. Wolverton's inaccurate and unreasonable reports to deny the Plaintiffs' damages. Furthermore, Defendant, CERTAIN UNDERWRITERS failed to accept or deny coverage for the remaining damages in writing within the statutory deadline.

22. Based on the improper, inadequate, and incomplete investigation of CERTAIN UNDERWRITERS, and its representatives, the Plaintiffs' damages were only estimated at $107,059.78 for dwelling and $184,449.56 for other structures.

23. To date Plaintiffs have yet to receive full payment on their Hurricane Harvey claim.

24. Defendant, CERTAIN UNDERWRITERS ignored the information provided by the Plaintiffs, their public adjuster, and Richard Clarke. Instead, Defendant, CERTAIN UNDERWRITERS chose simply to only rely on the portions of its adjuster's, consultant's, and vendors' reports which supported the results-oriented investigation and coverage decisions supporting denial of Plaintiffs' claim.

25. Defendant, CERTAIN UNDERWRITERS failed to perform its contractual obligation to compensate Plaintiffs under the terms of the Policy.

## CAUSES OF ACTION AGAINST DEFENDANT, CERTAIN UNDERWRITERS - COUNT I - BREACH OF CONTRACT

26. Each of the foregoing paragraphs is incorporated by reference in the following.

27. Plaintiffs and Defendant CERTAIN UNDERWRITERS executed a valid and enforceable written insurance contract providing insurance coverage to the insured location at 3103 US Highway 59 N, Victoria, Texas 77905. The policy provides coverage for the peril of wind, hurricane and rain, such as those sustained during Hurricane Harvey, among other perils.

28. All damages and loss to the Plaintiffs' property were caused by the direct result of a peril for which Defendant CERTAIN UNDERWRITERS insured the Plaintiffs, pursuant to the policy herein, specifically, the perils of hurricane, wind, and rain.

29. Defendant, CERTAIN UNDERWRITERS sold the subject insurance policy to Plaintiff State Bank of Texas insuring the subject insured property in its "as is" condition.

30. Plaintiffs suffered a significant loss with respect to the property at issue and additional expenses as a result of the high winds and rain that occurred during Hurricane Harvey.

31. Plaintiffs submitted a claim to Defendant, CERTAIN UNDERWRITERS pursuant to the contract of insurance for damages as a result of high winds and rain that occurred during Hurricane Harvey.

32. Plaintiffs provided Defendant, CERTAIN UNDERWRITERS, with proper notice of damage to the exterior and interior of the subject insured property.

33. Defendant, CERTAIN UNDERWRITERS ignored the information provided by the public adjuster and its own field adjusters that supported coverage of Plaintiffs' damage and chose to rely solely on its own claims examiner who did not inspect the property.

34. CERTAIN UNDERWRITERS by and through its adjusters and representatives have failed to properly evaluate the damages resulting from the covered cause of loss.

35. CERTAIN UNDERWRITERS by and through its adjusters and representatives failed to retain the appropriate experts and/or consultants to evaluate the hurricane winds and water damages to the subject property.

36. As of this date, CERTAIN UNDERWRITERS by and through its adjusters and representatives have failed to pay for the hurricane winds and water damages to Plaintiffs' property.

37. Plaintiffs have attempted on numerous occasions to obtain full and complete payment for covered losses pursuant to the insurance policy.

38. Defendant, CERTAIN UNDERWRITERS, acting through its agents, servants, representatives and employees has failed to properly investigate, evaluate and adjust Plaintiffs' claim for benefits in good faith and has further failed to deal fairly with Plaintiffs.

39. Defendant, CERTAIN UNDERWRITERS has failed and refused to evaluate the information and surrounding facts regarding Plaintiffs' covered claim, choosing instead to hide behind palpably incorrect assumptions and conclusions of its agents, employees or consultants.

40. As of this date Defendant, CERTAIN UNDERWRITERS continues to be in breach of the contract.

41. CERTAIN UNDERWRITERS ignored the information provided by Plaintiffs and their public adjuster during the handling of the claim and did not make any payment to indemnify Plaintiffs for the full amount of the covered damages.

42. CERTAIN UNDERWRITERS failed to make any payment after receipt of the additional information from Plaintiffs and their public adjuster.

43. The mishandling of Plaintiffs' claim caused a delay in Plaintiffs' ability to fully repair the Property, resulting in additional damages.

## COUNT II - VIOLATIONS OF THE TEXAS UNFAIR OR DECEPTIVE PRACTICES ACT

44. Each of the foregoing paragraphs is incorporated by reference in the following.

45. Defendant CERTAIN UNDERWRITERS is an entity that is required to comply with Tex. Ins. Code Sections 541.051; 541.060; 541.061; and 541.151. Defendant's conduct constitutes multiple violations of the Texas Unfair or Deceptive Practices Act.

1. Misrepresenting a material fact or policy provision relating to coverage at issue;

   a. Making an untrue statement of material fact. CERTAIN UNDERWRITERS through its agents, employees, or consultants prepared an estimate of damages that was misleading as to the value of damages to the subject property stating the total damages were only

8

   valued at $107,059.78 for dwelling and $184,449.56 for other structures.

   b. Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made.  CERTAIN UNDERWRITERS through its agents, employees, or consultants failed to advise Plaintiffs that it failed to perform proper testing of the building and property in order to more accurately investigate and evaluate the damages resulting from the covered perils of hurricane, wind and rain.

   c. Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. CERTAIN UNDERWRITERS through its agents, employees, or consultants advised Plaintiffs and their public adjuster that it had investigated and evaluated the damages to the subject property resulting from the August 25, 2017 hurricane and concluded its coverage determination, thereby misleading the Plaintiffs to conclude that a proper and complete investigation had been performed.

2. Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear.  CERTAIN UNDERWRITERS failed to consider reports provided by Plaintiffs' and failed to utilize information in the reports that would support coverage of Plaintiffs' damages.

3.  Failing to promptly provide a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim. To date, Defendant has failed to provide a reasonable explanation of the basis of its denial of coverage for all of Plaintiffs' damages.

4.  Refusing to pay a claim without conducting a reasonable investigation with respect to the claim. CERTAIN UNDERWRITERS through its agents, employees, or consultants failed to request its employees, agents, or consultants to perform proper testing of the building at the subject insured property in order to properly evaluate the extent and value of damages resulting from the Hurricane Harvey event of August 25, 2017.

46.  Defendant's unfair settlement practice in failing to conduct a proper and thorough evaluation, failing to perform adequate testing of the building to more accurately investigate and evaluate the damages, failing to advise Plaintiffs that it had not performed proper testing of the building and had not properly investigated and evaluated the damages, and preparing both a misleading and inaccurate damage estimate resulted in Defendant's failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claims, even though Defendant's liability under the policy was reasonably clear, and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. Tex. Ins. Code Sections 541.051, 541.060 and 541.061.

### COUNT III – VIOLATIONS OF THE PROMPT PAYMENT OF CLAIMS ACT

47.  Each of the foregoing paragraphs is incorporated by reference here fully.

48. Defendant's conduct constitutes multiple violations of the Texas Prompt Payment of Claims Act - Tex. Ins. Code Chapter 542. All violations made under this article are made actionable by Tex. Ins. Code Section 542.060.

49. Specifically, Defendant failed to accept or reject Plaintiffs' claim within the time period or notify the Plaintiffs why it needed more time, as required by Tex. Ins. Code 542.056.

50. Defendant failed to timely conduct a proper investigation of the damages to the subject property resulting from a covered peril. resulting in a delay of payment of adequate insurance benefits as contracted under the insurance policy between the parties.

51. Defendant's failure to give adequate consideration to the information provided by Plaintiffs' public adjuster and Richard Clarke, which made liability reasonably clear, resulted in additional delay of payment of the claim after having sufficient information to make payment for such claim.

52. CERTAIN UNDERWRITERS ignored the information provided by Plaintiffs and Plaintiffs' public adjuster during the handling of the claim and did not make a payment.

53. CERTAIN UNDERWRITERS, upon receipt of the Risk Protection Services estimate from Richard Clarke and Plaintiffs, had sufficient information to make full payment to Plaintiffs for the damages, but as of this date has failed to do so.

### COUNT IV - BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

54. Each of the foregoing paragraphs is incorporated by reference here fully.

55. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to its insured pursuant to the insurance contract and in direct contradiction of the applicable industry standards of good faith and fair dealing.

56. Defendant failed to conduct a proper and thorough evaluation, failing to perform adequate testing of the building to more accurately investigate and evaluate the damages, failing to advise Plaintiffs that it had not performed proper testing of the building and had not properly investigated and evaluated the damages, and preparing both a misleading and inaccurate damage estimate.

57. Defendant's failure, as described above, to adequately and reasonably investigate, evaluate, and pay the benefits owed under the insurance contract, knowing full well through the exercise of reasonable diligence that its liability was reasonably clear, resulted in a breach of the duty of good faith and fair dealing.

58. CERTAIN UNDERWRITERS ignored the information provided by Plaintiffs' public adjuster during the handling of the claim and did not make any payment.

59. CERTAIN UNDERWRITERS failed to make any payment after receipt of the additional information from the public adjuster and Richard Clarke, when CERTAIN UNDERWRITERS knew or should have known liability was reasonably clear.

### COUNT V – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

60. Each of the foregoing paragraphs is incorporated by reference here fully.

61. At all material times herein, Plaintiffs were "consumers" who purchased insurance products and services from Defendant, CERTAIN UNDERWRITERS and the products and services form the basis of this action.

62. Defendant CERTAIN UNDERWRITERS has violated the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") in at least the following respects:

   a. By accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action prohibited by DTPA § 17.50(a)(1)(3) in that Defendant CERTAIN UNDERWRITERS took advantage of Plaintiffs' lack of knowledge, ability, experience, and capacity to a grossly unfair degree, resulting in a gross disparity between the consideration paid in the transaction and the value received, all in violation of Chapters 541 and 542 of the Texas Insurance Code;

   b. Generally engaging in unconscionable courses of action while handling the claim; and/or

   c. Violating the provisions of the Texas Insurance Code, as further described elsewhere herein.

## KNOWLEDGE AND INTENT

63. Each of the acts described above, together and singularly, was done "knowingly" and "intentionally" and was a producing cause of Plaintiffs' damages described herein.

## DAMAGES AND PRAYER

64. **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs herein, complain of Defendant CERTAIN UNDERWRITERS' acts and omissions and pray that, Defendant be cited to appear and answer and that upon a final trial on the merits, Plaintiffs recover from Defendant the following:

65. Plaintiffs would show that the aforementioned acts, taken together or singularly, constitute the proximate and/or producing causes of damages sustained by Plaintiffs.

66. For breach of contract by Defendant, CERTAIN UNDERWRITERS, Plaintiffs are entitled to regain the benefit of their bargain, which is the amount of the claims, together with attorney's fees, pursuant to Tex. Civ. & Rem. Code Sec. 38.001 *et seq*.

67. For noncompliance with the Texas Unfair or Deceptive Practices Act by Defendant, CERTAIN UNDERWRITERS, Plaintiffs are entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the policy, including but not limited to direct and indirect consequential damages, mental anguish, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiffs ask **for three (3) times** its actual damages, pursuant to Tex. Ins. Code Ann. Section 541.152 *et seq*.

68. For noncompliance with the Texas Prompt Payment of Claims Act by Defendant, CERTAIN UNDERWRITERS, Plaintiffs are entitled to the amount of their claim, as well as ten (10) percent interest per annum post judgment interest, together with reasonable and necessary attorney's fees, as allowed by law, and for any other further relief, either at law or in equity, to which it may show itself to be justly entitled, pursuant to Tex. Ins. Code Sec. 542.058 *et seq*. and 542.060 *et seq*.

69. For violations of the common law duty of good faith and fair dealing by Defendant, CERTAIN UNDERWRITERS, Plaintiffs are entitled to actual damages, direct and indirect consequential damages, mental anguish, and exemplary damages.

70. For noncompliance with the Texas Deceptive Trade Practices Act ("DTPA") by Defendant, CERTAIN UNDERWRITERS, Plaintiffs are entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to

the policy, including but not limited to direct and indirect consequential damages and mental anguish damages, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiffs ask for **three (3) times** their damages, pursuant to the DTPA and Tex. Ins. Code Ann. Section 541.152 *et seq*.

## JURY DEMAND

71. Plaintiffs respectfully demand a **trial by jury**.

Respectfully submitted,

**PANDIT LAW FIRM, L.L.C.**

BY: /s/ *Phillip N. Sanov*
**PHILLIP N. SANOV, Bar No. 17635950**
**CARLA R. DELPIT, Bar No. 2248226**
**One Galleria Tower**
**2700 Post Oak Blvd., 21st Floor**
**Houston, Texas 77056**
**Telephone:   (832) 583-5663**
**Facsimile:   (504) 313-3820**
**Email: psanov@panditlaw.com**
           **cdelpit@panditlaw.com**

**ATTORNEYS FOR PLAINTIFFS**
**JAI HANUMAN HOSPITALITY, LLC**
**AND STATE BANK OF TEXAS**